```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                       FORT MYERS DIVISION
```

KOTORI DESIGNS, LLC, a North
Carolina limited liability
company d/b/a InkWell Press,

     Plaintiff,

v.                                  Case No: 2:16-cv-637-FtM-99CM

LIVING WELL SPENDING LESS,
INC., a Florida corporation
and RUTH SOUKUP, an
individual,

     Defendants.
_____

## OPINION AND ORDER

This matter comes before the Court on Plaintiff's <u>ex parte</u> Motion for Temporary Restraining Order and Preliminary Injunction (Doc. #2) filed on August 15, 2016. For the reasons set forth below, Plaintiff's request for a temporary restraining order is denied.

### I.

On August 15, 2016, Plaintiff Kotori Designs, LLC d/b/a/ InkWell Press (Plaintiff) filed a two-count Verified Complaint against Defendants Living Well Spending Less, Inc. (LWSL) and Ruth Soukup (Ms. Soukup) (collectively, Defendants) alleging common-law trademark infringement (Count I)[1] and unfair competition and false designation of origin, in violation of Section 1125(a) of

---

[1] The Court presumes that the reference to 15 U.S.C. § 1125(a) in the title of Count One was a scrivenor's error.

the Lanham Act, 15 U.S.C. §§ 1051 et seq. Specifically, Plaintiff alleges that Defendants are selling a weekly planner whose name, the "Living Well Planner," infringes upon Plaintiff's common-law "Livewell Planner"[2] mark associated with Plaintiff's own weekly planner product, which Plaintiff claims has generated approximately 60% of its seven-figure revenue and has been sold in all fifty states and more than forty countries. (Doc. #1, ¶ 13.) Plaintiff alleges further that the "Living Well Planner" is being sold online in Defendants' "Living Well Shop," (id. ¶ 24), which name also infringes Plaintiff's trademark. The Complaint requests, inter alia, that Defendants be preliminary and permanently enjoined from using their "Infringing Marks" (i.e. "Living Well Planner" and "Living Well Shop") "in connection with day planners, related accessories, and related services, including retail services" and from continued pursuit of their trademark applications for "Living Well Planner" and "Living Well Shop"; be required to deliver all materials containing the Infringing Marks to Plaintiff to be destroyed; and be made to account to Plaintiff for sales associated with the Infringing Marks.

At the same time the Complaint was filed, Plaintiff also filed an ex parte Motion for Temporary Restraining Order and Preliminary

---

[2] The Complaint inconsistently refers to Plaintiff's product as the "liveWELL Planner" and the "LIVEWELL PLANNER." It is not clear whether the different capitalization is a distinction with a difference for trademark protection. In this Opinion and Order, the Court will refer to the product as the "Livewell Planner."

Injunction (Motion for TRO or Motion), requesting Defendants be enjoined from proceeding with the upcoming shipment(s) of their new version of the "Living Well Planner." Plaintiff states that it is attempting to provide notice of the Motion and Complaint to Defendants' counsel of record in Gainesville, Florida, but argues that immediate ex parte relief is nevertheless appropriate, since it "has just learned that Defendants are preparing to ship a significant number of the new "Living Well Planner" on or before August 31, 2016.[3] (Id. p. 2.) Plaintiff contends that shipment of the new planners will immediately and irreparably harm Plaintiff. The basis for this contention is that the name and attributes of Defendants' product are sufficiently similar to those of Plaintiff's product, so as to confuse the public and weaken Plaintiff's "Livewell Planner" mark, yet, at the same time, Defendants' product is of "inferior quality," such that its dissemination will harm Plaintiff's goodwill and reputation.

---

[3] Attached to the Motion for TRO as Exhibit 7 (Doc. #1-7) is what appears to be an undated screenshot (a picture taken of a phone screen using the phone itself) from a Facebook page on which "Living Well Spending Less" is telling customers who are asking when the new "Living Well Planner" will ship to "[s]tart checking your mailboxes next week." A court deciding a motion for a temporary restraining order or a preliminary injunction may rely on evidence that might otherwise be inadmissible, so long as "the evidence is appropriate given the character and objectives of the injunctive proceeding." Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995) (quotation omitted); cf. Miche Bag, LLC v. Marshall Grp., Inc., No. 3:10-CV-129RM, 2010 WL 2175837, at *1 (N.D. Ind. May 28, 2010) ("TROs ordinarily are based on quick and dirty records, necessarily incomplete because of the lack of preparation that accompanies emergency hearings.").

Plaintiff claims that, in contrast, temporary delay of Defendants' shipment (at least until August 31, 2016 - the shipment date advertised on Defendants' website) will not harm Defendants. As far as the Court is aware, Defendants have not yet been served with Plaintiff's Complaint or Motion.

**II.**

Federal Rule of Civil Procedure 65(b) authorizes a court to issue a temporary restraining order <u>ex</u> <u>parte</u> – that is, against a party who has not yet received notice of the motion seeking temporary relief or had an opportunity to be heard. To be entitled to such relief, however, the movant must first make a "clear[] show[ing] that immediate and irreparable injury, loss, or damage will result . . . before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b). Such an order "will be entered **only in emergency cases** to maintain the status quo until the requisite notice may be given and an opportunity is afforded to opposing parties to respond to the application for a preliminary injunction." M.D. Fla. R. 4.05(a) (emphasis added).[4] More specifically, the Eleventh Circuit has held that a party is not entitled to a temporary restraining order unless it first establishes the following four factors: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the

---

[4] Plaintiff's Motion for TRO appears to comply with the requirements set forth in Local Rule 4.05(b).

threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest."[5] Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005) (citations omitted).

As to the first prong, claims for trademark infringement and unfair competition - whether asserted under the Lanham Act or Florida's common law[6] - both require the claimant to establish "(1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." Suntree Techs., Inc. v. Ecosense Int'l, Inc., 693 F.3d 1338, 1346 (11th Cir. 2012) (quotation omitted)); see also Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 360 (11th Cir.) (stating a claim for infringement requires the court to determine "which party had the prior and superior rights to [the] mark"), opinion modified on reh'g, 122 F.3d 1379 (11th Cir. 1997).

Two factors are considered when determining whether a party has superior trademark rights: the distinctiveness of the mark and the date the mark was first used in commerce. Trademark protection

---

[5] These are the same factors used when determining the propriety of issuing a preliminary injunction. Id.

[6] "The analysis of liability for Florida common law trademark infringement is the same as under the Lanham Act." PetMed Express, Inc. v. MedPets.Com, Inc., 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004) (citing Gift of Learning Found., Inc. v. TGC, Inc., 329 F.3d 792, 802 (11th Cir. 2003)).

is afforded only "to distinctive marks, that is, marks that serve the purpose of identifying the source of the goods or services." Knights Armament Co. v. Optical Sys. Tech., Inc., 654 F.3d 1179, 1188 (11th Cir. 2011) (quotation omitted). There are four categories of trademark "distinctiveness." Id. From distinctively-strongest to weakest, a mark can be: (1) arbitrary or fanciful; (2) suggestive; (3) descriptive; or (4) generic. Id.

Plaintiff's Motion for TRO argues that the "Livewell Planner" mark is "inherently distinctive" in that it "requires some imagination, thought, or perception to reach a conclusion as to the nature of th[e] good[]" to which it is affixed; "The terms 'live well' suggests a desired result of using the product." (Doc #2, p. 15.) For purposes of resolving this Motion, the Court agrees that the "Livewell Planner" mark likely falls into the "suggestive" category and is thus a distinctive mark, deserving of trademark protection. See Nane Jan, LLC v. Seasalt & Pepper, LLC, No. 2:14-CV-208-FTM-29CM, 2014 WL 5177655, at *4 (M.D. Fla. Oct. 14, 2014) ("A suggestive mark suggests some characteristic of the product or service to which it is applied, but requires a leap of the imagination by the consumer to determine the nature of the product or service." (citing Frehling Enters., Inc. v. Int'l Select Grp., Inc., 192 F.3d 1330, 1335 (11th Cir. 1999))).

But even where a mark is sufficiently distinct to be afforded trademark protection, the party seeking to avail itself of that protection must also establish that it was the first to use the

mark in commerce. Hana Fin., Inc. v. Hana Bank, 135 S. Ct. 907, 909 (2015) ("Rights in a trademark are determined by the date of the mark's first use in commerce. The party who first uses a mark in commerce is said to have priority over other users."). This is where Plaintiff's claim falters.

According to the Verified Complaint, even though Plaintiff did not file its trademark application for "Livewell Planner" until March 3, 2016, (Doc. #1, ¶ 17), it began selling the "Livewell Planner" at least as early as October 22, 2014. (Id. ¶ 16.) Defendants, in contrast, filed a trademark application for "Living Well Planner" on November 5, 2015 (id. ¶ 20) – the same date that such mark was first used in interstate commerce (id.) – and for "Living Well Shop" on June 14, 2016 (id. ¶ 22) (although the shop could have been used as early as April 26, 2016 (id. ¶ 23)). Based *solely* on these allegations, the Court would not have trouble concluding that Plaintiff is substantially likely to succeed in establishing a common-law trademark in "Livewell Planner."[7] The problem, however, is that these dates do not tell the whole story regarding Defendants' use of the "Living Well" moniker. This is not a name Defendants pulled out of thin air or stole from Plaintiff; rather, "Living Well Spending Less" is seemingly the

---

[7] To state a claim for trademark infringement or unfair competition under the Lanham Act, "a plaintiff need not have a registered mark. . . . [T]he use of another's unregistered, *i.e.*, common law, trademark can constitute a violation . . . ." Tana v. Dantanna's, 611 F.3d 767, 773 (11th Cir. 2010) (quotation omitted).

name of a website (or perhaps, more accurately, a "blog") that Ms. Soukup has been operating since 2010, and which receives "more than one million monthly readers."[8] It thus makes sense that, when Defendants decided to create a planner, they chose to call it the "Living Well Planner."

This creates at least two obstacles to Plaintiff's ability to show that it has prior and superior rights in the "Livewell Planner" mark. First, it is possible – albeit improbable – that Defendants' use of "Living Well Planner" can be "tacked back" to Defendants' first use of "Living Well" – presumably in 2010. Hana, 135 S. Ct. at 909 ("Recognizing that trademark users ought to be permitted to make certain modifications to their marks over time without losing priority, lower courts have provided that, in limited circumstances, a party may clothe a new mark with the priority position of an older mark. This doctrine is called 'tacking,' and lower courts have found tacking to be available when the original and revised marks are 'legal equivalents' in that they create the same, continuing commercial impression.").

Even if Defendants cannot successfully invoke the tacking doctrine, it may be that *Plaintiff's* use of "Livewell Planner" actually infringes upon prior trademark or service mark rights Defendants have in "Living Well." See, e.g., Rexel, Inc. v. Rexel

---

[8] Living Well Spending Less, The LWSL Story (last accessed August 17, 2016), http://www.livingwellspendingless.com/about/about-me/.

Int'l Trading Corp., 540 F. Supp. 2d 1154, 1163 (C.D. Cal. 2008) ("[C]ourts have frequently found that consumers may be confused by marks used in connection with goods by one party and services by another." (collecting cases)); Beef/Eater Rests., Inc. v. James Burrough Ltd., 398 F.2d 637, 639 (5th Cir. 1968) ("[I]t is repeatedly held that the parties need not be in competition and that the goods or services need not be identical [for trademark infringement to occur].").[9] Given these potential hurdles to Plaintiff's ability to establish its prior and superior right to the "Livewell Planner" mark, the Court finds it inappropriate to take ex parte action against Defendants.[10]

Moreover, even if the Court could conclude that Plaintiff likely has common-law rights in the "Livewell Planner" mark, the Court would still deny the request for a temporary restraining order. Plaintiff has not convincingly articulated how the upcoming shipment of Defendants' new "Living Well Planner" will subject Plaintiff to harm that is "immediate and irreparable." It

---

[9] Decisions of the Fifth Circuit Court of Appeals handed down prior to the close of business on September 30, 1981 are binding Eleventh Circuit precedent. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981).

[10] Because the Court concludes Plaintiff has not shown it is substantially likely to succeed in establishing a prior and superior right in "Livewell Planner," as would justify the extraordinary ex parte remedy it seeks, the Court need not reach the second question: whether Defendants' "Living Well Planner" mark is "confusingly similar." The Court notes, however, that Plaintiff has presented evidence that consumers have in fact confused the two products. (Doc. #1-5.)

may be that, in some circumstances, reputational harm resulting from a product that bears an infringing mark and is of allegedly-inferior quality can be sufficiently "immediate and irreparable" to justify an ex parte order temporarily restraining distribution of the product. Here, however, the "emergency situation" contemplated by Local Rule 4.05(a) is not present, since **Defendants have already been selling a "Living Well Planner" for at least ten months**. (Doc. #1, ¶ 20.) Plaintiff has known this since at least June 17, 2016 - the date on which it received the U.S. Patent and Trademark Office's "office action" identifying Defendants' application for the "Living Well Planner" mark (id. ¶ 30) – and probably earlier. Yet Plaintiff inexplicably chose to wait another two months before seeking ex parte relief. As the Court sees it, any "emergency" is of Plaintiff's own making and warrants denial of the request for a temporary restraining order.[11] See PTT, LLC v. Gimme Games, No. CIV.A. 13-7161 JLL J, 2014 WL 5343304, at *1 (D.N.J. Oct. 20, 2014) (discussing prior denial of motion for a temporary restraining order where plaintiff could not show it would "suffer *immediate* temporary harm in the absence of a temporary restraining order," since plaintiff was aware that

---

[11] Plaintiff's claim of "reputational harm" resulting from the "inferior quality" of Defendants' product is also *significantly* undermined by the fact that, according to Defendants' website, the first version of the "Living Well Planner" "sold out in record time, before the first planner even shipped." The Living Well Planner (last accessed August 17, 2016), http://livingwellplanner.com/. Indeed, customers are apparently "dying to get" the new planners. (Doc. #1-7.)

"[d]efendants' allegedly infringing feature ha[d] been on the market [for nearly one year]"). On the other hand, Defendants may face a substantial risk of reputational (and perhaps commercial) harm if they cannot ship their new "Living Well Planner" to excited consumers who have already been told: "Start checking your mailboxes next week!" (Doc. #1-7.)

Accordingly, it is hereby

**ORDERED:**

Plaintiff's Motion for Temporary Restraining Order (Doc. #2) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this 17th day of August, 2016.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record